We'll hear argument next this morning in Case 14-1096, Torres v. Lynch. Mr. Guadagno. Mr. Chief Justice, and may it please the Court. Congress made a choice. Congress did not choose to make generic arson an aggravated felony. Instead, Congress chose to make Federal arson an aggravated felony. And that makes sense. The Federal arson statute has a minimum sentence of 5 years. There are at least 18 States with arson offenses that are classified as misdemeanors. Arizona and Colorado have misdemeanor arson offenses involving damage to property worth less than $100. Congress would not have wanted to make such minor offenses aggravated felonies. We know this because of the statutory scheme. Within the aggravated felony statute, we have generic offenses, very serious ones like murder and rape. There are no sentence requirements for those very serious generic offenses. However, for the remaining generic offenses that are listed in the aggravated felony statute, they are associated with a sentence of a year or more. Theft offenses, obstruction of justice, burglary, they all require a sentence of a year or more. Also listed among the generic offenses is crime of violence. There is a requirement of a sentence of a year or more. Arson is a crime of violence. And so Congress would have realized that arson offenses would fall under the crime of violence provision, and for more serious State arson offenses, they would fall under this provision, so that for the minor arson offenses, where there is a sentence of less than a year, the individual would not be an aggravated felon and would be eligible for discretionary relief. Ginsburg. But your reading leaves out some very serious arson offenses, say, under foreign law or under State law. It could be the worst kind of arson, but there is no commerce cooker, and so it would be left out on your reading. But on our reading, while it wouldn't fall under the E provision in the aggravated felony statute, these more serious arson offenses, the State and foreign offenses, they would fall under the F crime of violence provision, where there is a sentence to a year or more. And under that approach, these less serious arsons would not be aggravated felons, and individuals like my client, Mr. Luna, who only received a sentence of one day, they would be eligible to receive cancellation of a war. Alito Do you think that's still clear after our decision in Johnson? Johnson, if I remember correctly, dealt with 16b. He could still be an aggravated felon under 16a. But regardless, what I'm talking about is that But what you're relying is, you're relying on language that is similar to, and maybe different in an important respect, but nevertheless bears some similarity to the residual clause in the Armed Criminal, Armed Career Criminal Act. Does it not? Yes. I'm talking about what Congress intended. When Congress writes a law, it doesn't intend for the Supreme Court to find the language ambiguous and strike it down. So that we should be looking at what Congress's intent was, not whether or not crime of violence will still be an aggravated felony after Johnson, if the State and foreign If there are problems with this, that will be for Congress to fix. May I ask you about the statutory language that seems to me to present the greatest problem for your position? Maybe it's not fatal, but what I'm referring to is the provision that says the term applies, so we're looking at whether the State offense here is described in the Federal Arson Statute, and then there's language that says the term applies to an offense described in this paragraph, whether in violation of Federal or State law. What do you make of that? It can be argued that what that means is that when you have a Federal offense with a jurisdictional provision, you disregard the jurisdictional provision, because you're never going to find that in a State provision. The language you're referring to is referred to normally as the penultimate sentence. And the penultimate sentence merely tells us that State offenses that are described in the aggravated felony provision are aggravated felonies. In the Board's first matter of Vasquez-Munoz decision, the Board looked at that language and concluded that all that means is that sometimes State offenses could be aggravated felonies and require that State offenses always be aggravated felonies. Roberts, but I mean, the point is, usually when you see language, you know, in interstate commerce, your immediate reaction is, oh, that's Federal jurisdiction as opposed to State. But here the one thing we know is they didn't want it to matter. They said in violation of Federal or State law. So as I look at it, your instinctive reaction is to say, well, then of course you don't have to worry about the provision that's in there to limit the offense to Federal  Sotomayor, this language, it doesn't directly address jurisdiction. It's just saying that certain offenses, certain State offenses can be aggravated felonies. But it's not saying that there's not. Sotomayor, it's not saying that there's no jurisdiction for those crimes, right? That's correct, Your Honor. And so for most of those crimes, there's no jurisdictional element at all. That is also correct, yes. So if you're looking at this as superfluous to not this individual sub-provision, one sub-provision of many, it's doing a lot of work. Yeah. It's doing a lot of work because there are a lot of other crimes that qualify under State law, correct? That's correct. I mean, your brief and Solicitor General's sort of tunnel in on this one provision of many, but I'm wondering why. I'm looking at the entire provision has many State court analogs that don't involve interstate commerce, correct? Yes. So under our reading of the statute, it doesn't render the penultimate sentence a nullity, because as Justice Sotomayor noted, there are many State provisions that will still be aggravated offenses. We have all the generic offenses. All the generic offenses will be both State and the Supreme Court. What your theory does is at least create a world in which some things are included and some things are excluded in a way that appears not to make much sense. Now, you've said, no, there is a reason for doing this with arson to limit it to the Federal offense. But, I mean, there are a lot of things, a lot of things on that list that have jurisdictional hooks in them. So you would be excluding, in addition to arson, you would be excluding the child pornography crime, you would be excluding a kidnapping crime, excluding felon in possession, excluding receiving explosives for the purpose of killing somebody. So you would be excluding all of those. And then, on the other hand, you would be including some things that seem a lot more minor that just happen not to have jurisdictional hooks, like operating a gambling establishment. So you create a world in which the exclusions and the inclusions seem not to match up with anybody's view of sensible categorization. Well, the same way that there's an aggravated felony provision for arson and the generics, for all those things that Your Honor mentioned, there are other categories of aggravated felony which would cover State offenses for those things, sexual abuse of a minor, crime of violence. And even outside the aggravated felony scope, we have crimes involving moral turpitude. So individuals who commit those crimes on the state, they would still be removable and they would still be removable for aggravated felonies. Alito, I think to the two defendants, one is convicted of the Federal offense of possession of a firearm by a convicted felon, where you have to prove a connection between the firearm and interstate commerce. The second defendant is convicted under an identical State statute, but, of course, there's no need to prove an interstate commerce element. And under your argument, the first would be included and the second would not. But the person, the State individual would still be removable under the firearms removability ground. Kennedy, but that may be discretionary or mandatory. That does avoid the question somewhat. You say, oh, well, there's another section, don't worry, that's your answer. But that doesn't seem to be a complete answer to the statutory question that the Justice Alito's question poses. You're making a statute of nullity as to the States. Well, you know, the interstate commerce provision, it's an element of the statute that's required for a conviction. But does it have to be expressed in the statute? Is it not always a required element of a Federal crime? There has to be Federal jurisdiction. So as a matter of fact, every Federal crime has some jurisdictional element in it, right? Whether it's expressed in the text of the statute or not. The statute's invalid if there's no Federal hook. But at the same time, in Federal criminal law. But you're not limiting it. You're just limiting it to the jurisdictional element recited in the statute, right? That seems to me a little illogical. But in this Court always requires the jurisdictional element for the conviction. Jones v. United States, there was a conviction under 18 U.S.C. 844i, and this Court overturned that conviction because the interstate commerce element wasn't met. So you can't have the Federal conviction without the interstate commerce element. No, but it doesn't have to be recited in the statute. I mean, if a defendant could come in and challenge his conviction on the ground that there was no basis on which the Federal government could have reached my conduct, it was not interstate commerce, it was not pursuant to a treaty or anything else, doesn't that make the Federal jurisdictional hook a necessary element of any Federal crime? I mean, yes, the Federal jurisdictional element is a requirement for a conviction. And what you're not arguing that. You're saying only when it's recited in the statute, right? I'm not following the distinction that you're making. Sotomayor on those other, the ones that are not stated in the statute, it's presumed it doesn't have to be proven to a jury beyond a reasonable doubt, correct? Okay. Correct, yes. Could I have my colleague, Justice Breyer. Okay. I became interested in the argument of the National Association of Criminal Lawyers, and basically their position is that the definition here that says an offense  relating to explosive material offenses, and they argue that that takes arson out of this section. Why — I don't see that argument in your brief. Are you disavowing it? And if so, why? We're not disavowing it, and I think that that does show, support our position in that, it shows how easy it is when you have broad language that says eliminate elements, as the government says, that it could be any element that gets eliminated. They're saying it's jurisdiction. In the amicus brief, it says arson. I'm not even on your point. Okay. All right? Did you read the National Association? I am familiar with it. All right. They don't argue that point at all. Okay. They're just saying that this — this is not covered by the fire, the arson is not covered by the statute at all, by the enhancement at — by the statute at all, except under the arson provision that requires a sentence for a year. That's their argument. That is their argument. Forget about interstate or anything else. So tell me why you didn't make that argument. We — we didn't make that argument just because we didn't think about it. Their brief came after ours. And — and we don't necessarily disagree with their provision. With their argument, we just didn't make it in our brief. But it does support our position in this, as I was saying earlier, that — that, you know, the statute says described in, okay, and the government is saying described in tells us that we can eliminate elements, but what's the criteria? How do you know what — what element gets eliminated? And that example shows that it may not necessarily be the jurisdictional element, and it could just as well be the arson element. And, yeah, why does it have to be the jurisdictional element that gets eliminated? It could just as easily be the arson element. The jurisdictional — the sole purpose of it is to enable Federal authority to be brought to bear on the problem. It has no relationship to the conduct. The arson is the same. The only reason for the jurisdictional provision is to authorize Federal action. It had nothing to do with the conduct involved in the crime itself. So I think a jurisdictional provision is not like any other element. It's there for one purpose only, which is to authorize Federal action. On page 24 of our brief, we cite three provisions from Title 18, two from 18 U.S.C. section 3142, and the third one is 18 U.S.C. section 5032. And these three provisions have language referring to State offenses, if circumstances giving rise to Federal jurisdiction had existed. That — that is very clear language, removing the jurisdictional element or — or applying a State offense with — to a Federal law firm. Ginsburg, I agree with you, that's clear, but it still doesn't say if the jurisdictional element, why not some other element? Because jurisdictional elements are unique. Sotomayor, but the important point about those three Federal statutes is that Congress is saying that if they want jurisdictional elements to be ignored, they're going to say so and they're going to say so with clear language, much clearer language than the penultimate sentence or described in, and Congress didn't do that here. I mean, basically, we're asking to apply the full language of the statute, and the government is saying omit things. And to omit things, you need clear language. Roberts, No, but your assumption is that there — an element is an element is an element, whether it's substantive or jurisdictional, and that's not the way our cases have treated them, or the general. I mean, you don't need to rely on it for everything. The Model Penal Code draws a precise distinction between matters relating to the harm or evil sought to be prevented and facts that relate to jurisdiction venue or limitations. But still, the jurisdictional element is required for the conviction. You cannot have the conviction. No, I know, but my point is it's required for conviction, but that doesn't necessarily mean that you would include the jurisdictional element when you're saying, well, what does the crime — what is the harm or evil sought to be prevented? And in a statute like this, it seems to me that that's what Congress is concerned about, not the technical elements like, for example, venue. I mean, is venue an element if it's listed under the criminal provision? Well, sure, it's an element that could have to be proved depending on the terms of the statute, but that has nothing to do with the harm or evil sought to be prevented. You know, going back to the United States v. Jones again, I mean, this Court said that Congress didn't intend to make all arson — all arsons Federal offenses. And by the same token, that if Congress didn't intend to make all State arsons Federal offenses, they shouldn't have intended to make all State arsons removable offenses or aggravated felonies. Roberts. But they wanted to make arsons offenses whether in violation of Federal or State law. But it's described in this paragraph, so it's still — the language of the penultimate sentence is still requiring all the elements to be met. You know, it's described in. It has to be described in. And the 844i has that jurisdictional element, and there's nothing about the penultimate sentence that indicates that any element of that offense, of an offense, can be ignored. You know, under the categorical approach, this Court has regularly compared elements of offenses, and we've never had a categorical approach case where this Court has said an element can be excluded in the categorical analysis. And we've not addressed this question in the context of the categorical application of the categorical approach. I don't disagree. It's never come up in sort of my point. But still, in light of the fact that Congress is aware that this Court utilizes the categorical approach, Congress would have used strong language or clearer language if there was going to be a modification of the categorical. I mean, this would be a major deviation from the way that the categorical approach  And the way that the categorical approach is applied, and— Kagan. Mr. Guadagno, this is along the same lines as the Chief Justice's question. I mean, tell me if I'm wrong. The jurisdictional elements are different in one important way, which is that we don't require mens rea as to jurisdictional elements. So that's a pretty critical distinction that we've made, suggesting that jurisdictional elements are different. You know, you have to prove them, but you don't have to — the defendant doesn't have to have mens rea with respect to them. Why doesn't that suggest that there is a real distinction here between jurisdictional elements and substantive elements that can come into play in this context as well? Guadagno, this is what Congress chose. Congress chose statutory provision with jurisdictional elements, I think it should be presumed, that Congress knew what it was doing, and it meant— But that mens rea example is also an example where we're basically stating what we think Congress meant. And we're saying, you know, Congress could not have meant to require mens rea for a jurisdictional element, notwithstanding that there's not language in a statute that says, and there shall be no mens rea for a jurisdictional element, so why not the same here? Well, even if it's different, okay, you're going to say jurisdiction is different. It doesn't stop it from being a requirement. It may be a different element, it may be a different kind of requirement, but it's still a requirement. And so you can't just wish it away. The language in the statute isn't there to say circumstances giving rise to Federal jurisdiction had existed. Congress didn't put the language in the statute that was necessary to ignore the plain language of the statute, which is that Congress wanted convictions under 18 U.S.C. 844i to be aggravated felonies. The, the, I don't know, you could, perhaps, maybe treat it as we treated the $10,000 in the, in the, in the Ashawan case, right, and say, yeah, Congress did mean to pick up this definition, the jurisdictional part, but since no State explosives law will have that in the language, you could, the government could, if it wanted to prove it at the, prove that it was interstate commerce related at the deportation hearing. That's what we did with the $10,000, isn't it? Yes. The reason really is pretty similar here. The reason is there just isn't a, you know, there isn't a theft statute in the States which have a $10,000 thing in it, and so it didn't make really sense to think Congress wanted to exclude all those, and, and so here, there's a big thing, explosives. I mean, that's quite, quite a major problem, trying to have an explosive blow up a building. And I think if anything counts as an aggravated felony, it's that. But there is this jurisdictional problem. What do you think about that? I just. I think, in the Ashawan, I think, is, is a very different situation. In the Ashawan, it dealt with one specific provision. The $10,000 requirement just, just affected that, that single provision. And in that case, there was pretty much a nullity situation where that specific provision would, would, would have been rendered a nullity. Here, the penultimate sentence relates to the, the entire aggravated felony provision. So my, my reading of the statute does. The penultimate sentence of what? The penultimate sentence of, of, of 1101A43, the language, the term applies to an offense described in this paragraph, whether in violation of Federal or State law. The board, in its decisions, calls that the penultimate sentence. Not that much why I, I, I would keep referring to it as, as, as that. Breyer, I just need to read it. Okay. It's 1101A43. It is in the, the, our joint appendix at page 4A. Ginsburg. What about the respect that we owe to the BIA for their interpretation? The, the board should, should not be owed any, any, any deference on, under, under two different theories. One is that the criminal lenity rule should apply. The second is that the longstanding principle of construing lingering ambiguities in deportation, deportation statutes in favor of the alien should also be applied. And with regards to those rules, Chevron is not a rubber stamp. Chevron tells us that there are certain circumstances when, when, when deference should be applied to boards' decisions, and if, if those circumstances are not met, then the board is, is not supposed to be given deference. And in, in this particular situation, both of these principles that I've just mentioned, they're statutory tools of construction, and statutory tools of construction are supposed to be applied at, at Chevron step one, and therefore, the agency should not be owed deference. Unless there are any further questions, I've reserved for about all time. Roberts. Thank you, counsel. Ms. Goldenberg. Mr. Chief Justice, and may it please the Court. Section 1101A.43 indicates that violations of State and foreign law should be considered aggravated felonies, along with violations of Federal law. It was enacted against the backdrop of multiple doctrines across multiple areas of the law in which a jurisdictional element drops away when a Federal crime is being compared to a State or foreign crime. Sotomayor, all these examples you gave me in your brief, either it's clear explicitly that jurisdiction was excluded by the statute, or the nature of the offense gives jurisdiction, or the Assimilated Crimes Act, it makes sense because the whole purpose is that it's, that Federal, that a State law is going to apply when there isn't a Federal law. So applying jurisdiction makes no sense. But, so I don't take much from your argument, which is the fact that it drops away in other sections. Congress didn't just say it dropped away here. Well, our point isn't that each one of those is exactly analogous. It's that there are so many different places where it drops away and that that's very telling. And, of course, the purpose of this statute is to capture people who are particularly dangerous, who shouldn't be able to come in. Breyer, I thought, I agreed with that when I came in. And then I thought, my goodness, of course, it's an explosives crime? My God, blowing up a building or a person? If anything's an aggravated felony, that must be. Then the first words out of his mouth, your friend's mouth, were, have no fear. Read on. Because there is a section that makes it an aggravated felony to commit a crime of violence. And a crime of violence is very broadly defined. So any human being who commits an explosives violation where that's a State law violation will fall within the definition of aggravated felony because they will have committed a crime of violence. So now, if that's right, I'm left with only half the problem I thought I was left with, and the half I'm still left with is if we follow your interpretation, what we will suddenly do is put into the category aggravated felony, which for a crime of violence forbids the Attorney General to exercise her discretion and keep the person here even when she wants to, but the Muir case isn't a problem because, after all, she doesn't have to keep him here, all right? We put in every tax fraud, State, every racketeering, gambling, I mean, you know the list, and it includes an awful lot of trivial stuff. So now I have, removing the Attorney General's discretion when she wants to keep the thing here, keep the person here, in a whole lot of trivial stuff, if I accept your definition, and if I accept theirs, I don't have the problem I thought I had, which was that people who commit very serious explosive crimes are not in the category aggravated. So what is the answer to that? And I didn't think of it until I heard his first argument. I disagree with I think both halves of that. And let me start by talking about why I think it remains true, despite the crime of violence provision and other parts of the aggravated felony provision, that Petitioner's approach is radically underinclusive. First of all, it's important that we're not just talking about arson here. We're talking about all of the different described-in provisions where there is a Federal jurisdictional element. And so there are many things that it is clear would never be picked up by other parts of the aggravated felony definition. Breyer, I have the list in front of me, thanks to my law clerk, and I couldn't find anything on that list which either wouldn't fit within crime of violence or would be so terrible to leave out. Well, there are a couple of different examples. And I also think it's true, and I don't want to leave this on the table, that not all arsons would qualify as crimes of violence. So I want to get to that as well. But the things that would be left out and that would not be picked up by other parts of the aggravated felony provision under Petitioner's view would be a number of really serious child pornography offenses, if they were prosecuted by a State or by a foreign sovereign, including possessing child pornography, transporting child pornography, putting out a notice saying that you want to receive or exchange child pornography. None of that would be picked up by anything else in the provision. Petitioner says in his brief that the sexual abuse of a minor, generic offense, would pick that up, but it wouldn't pick up any of those things that I just described, although it might pick up some kinds of child pornography offenses. Gun possession offenses, being a felon in possession of a firearm, being a fugitive from justice in possession of a firearm, a lot of really serious gun possession offenses also, if prosecuted by a State or prosecuted by a foreign sovereign, would not be picked up, and Petitioner actually doesn't contend otherwise. So it is an under-inclusive approach, and that's true even with respect to arson, because under the crime of violence provision, that has to involve use of force against the person or property of another. A number of State arson offenses would cover arson against your own property, and this is a categorical approach. So if a State or a foreign sovereign would not be picked up, it would not be picked up. Sotomayor's argument is we have to interpret this thing to be as expansive as possible? I mean, you know, if Congress wanted to cover all those things, it could have used the language it used elsewhere, which says, you know, except for the jurisdictional element, but it didn't say that. What do you do about the Federal statute that makes arson of a Federal building a crime? Does that mean that all State arson statutes are picked up, whether it's of a Federal building or of the corner grocery store? No, I think you would have to engage in an analysis at that point about whether that element was a purely jurisdictional element or whether it had some substantive force to it. That's not an analysis. That's the key. Well, I think the key is if the board were going to undertake that analysis, which it hasn't done with respect to anything besides interstate commerce jurisdictional elements, which are classic jurisdictional elements, but if the board were going to undertake that analysis, I think it would look to the model penal code definition that the Chief Justice pointed to earlier, and that is the distinction between the harm or evil sought to be prevented and the legislature's power, jurisdictional power, to regulate that harm or evil. And in the case that you mentioned, I think that might very well be a substantive element, because Congress could be making a determination that if there's something particularly pernicious, particularly culpable, particularly in need of deterrence about arson with respect to Federal property, which Congress really especially wants to protect. But I don't think you can say that about the interstate commerce jurisdictional element, which this Court has recognized is a term of art. Sotomayor, why isn't that true here in light of the Court's decision in Jones? Didn't the Court's decision in Jones interpret the reference to interstate commerce to be something more than just a jurisdictional hook, but rather a substantive requirement that limited the scope of this particular statute to more severe instances of examples of the crime? I don't think so, because the analysis in Jones was against the backdrop of a constitutional avoidance principle, and the Court said there might very well have been constitutional problems with interpreting the statute more broadly. I think the best comparison is between Jones and Russell, and you can see there that the interstate commerce element is not doing substantive work. The effect in the statute is that the interstate commerce element is not doing substantive work. Otherwise, it wouldn't be in the statute. Well, it is picking a crime that only Congress would prosecute, which is, following up on Justice Alito's point, substantive because it's more serious. We have to protect people who are affected from interstate travel, or that affects interstate travel. You could, even following the model Penal Code, you could still call this substantive. I don't think so. And again, I think the comparison between Jones and Russell makes this point. In Russell, the Court said that the offense was something that could be prosecuted by the Federal government because it was arson of a rental property, which was used in interstate commerce. In Jones, it was arson against a private non-rental property, and that was said to fall outside the scope of section 844i. But I don't think you can say that there is something particularly pernicious or culpable about arson against a rental property versus arson of a non-rental property. I think what's happening here is. Scalia Why do I have to subject the Federal courts to this new distinction between a jurisdictional element that's substantive and one that isn't substantive, just jurisdictional? Why should I do that? I mean, if it's an element, it's an element. And if Congress really wants to eliminate the jurisdictional element, it can say so the way it did in some other statutes. And if it doesn't say that, you know, don't bother me. Isn't that a sensible way to handle this? I don't think so, Your Honor. I don't think it's possible to draw a negative inference from those other statutes. Congress obviously can get at the same meaning using different forms of words in different statutes in the U.S. Code. And what's very important about the statutes the Petitioner has pointed to that expressly say that the jurisdictional element should be taken out is that they don't have an element that shows Congress's intent in the aggravated felony provision that State offenses and foreign offenses count, along with Federal offenses, as aggravated felonies. And so I think once you've got that penultimate sentence in there, it may very well be that Congress no longer feels any need to put in language that's equivalent to the language in those other statutes. And that's the only textual basis for your position. You know, your brief does a good deal about the difference between described and defined, which the Petitioner has suggested is not a very good distinction, because the defined only refers to actual statutory definitions. So are you still relying on that? Are you relying on anything else in the statutory text beyond the penultimate sentence? Or is the penultimate sentence really the statutory basis for your argument? No, we're certainly still relying on the described language and the distinction between that language and other language that Congress chose to use elsewhere in the aggravated felony provision. It's just that we think that it's important that when you look at the meaning of described in, it be read in light of the penultimate sentence, in light of the purpose of this provision, in light of the irrational patchwork that would be created by Petitioner's view. So I think all those things inform how you would understand described in. But with respect to the question of whether defined in, in this provision, was just used to refer to dictionary-definition-type statutory provisions, I think that that is true as a descriptive matter. There are only a couple defined in provisions of the aggravated felony statute, and they do refer to other statutes that say the word X means Y. But that's not true throughout the U.S. Code, which was Petitioner's original submission. There are lots of places where Congress has used defined in to refer to offenses and to mean exactly what follows, but nothing else. And one very telling example is Section 844N, which actually refers to Section 844I, the provision at issue in this case, by talking about offenses defined in this chapter. So Congress had at its fingertips language that it could have used to refer to these Federal criminal provisions if all it had meant to do was to say, look, we want you to use exactly what comes after this and nothing else. And there's actually another distinction, as well as the defined in language, in the statute, and that's in subsection P, which is found on 4A, page 4A of the appendix to the government's brief. There, Congress uses the words "--in violation of"-- an offense which is in violation of a particular Federal statute. The upshot of Petitioner's position is that any time there is an interstate commerce jurisdictional element in any of the Federal provisions that are referred to, only a violation of the Federal statute, only a Federal criminal prosecution and conviction will count as an aggravated felony, because no State crime, no foreign crime is ever going to have interstate commerce as an element. If that's what Congress had meant, if it had meant to restrict it to violations of that Federal statute, then again, it had language at its fingertips that it has used elsewhere in this provision that would have allowed it to do that. And there's one other aspect of the statutory text that I'd like to mention, and that's just a particular example of a place where Petitioner's reading doesn't make sense in a particular context. In the statute, and that's subsection J, which is on page 2A of the appendix to our brief, and that's offenses described in several Federal provisions, one of which is RICO. RICO has in it interstate commerce elements. And then at the end of the provision, there is one of the limitations that Congress puts in sometimes, and the limitation is that the offense has to be punishable by more than one year. Again, under Petitioner's view, only actual violations of the Federal RICO statute and an actual Federal prosecution and conviction under the Federal RICO statute would ever count under subsection J as an aggravated felony. But if that were true, there would be no reason for Congress to have included that last clause there, because Federal RICO convictions are always punishable by more than a year. It says so right in the RICO statute, they're punishable by up to 20 years. So it must be that Congress. Scalia, I don't understand what you're saying again. I'll try. So it's subsection J. Got it. And it is an offense described in, and I'm just referring to the first Federal statute that's listed there. It's page 2A of the appendix to the government's brief. And I should say when this provision went into the aggravated felony statute, it was only RICO and not these other statutes that follow in subsection J that were listed. So it says an offense described in section 1962 of Title 18, which is RICO, for which a sentence of one year imprisonment or more may be imposed. And what I'm saying is you can always impose a sentence of one year or more as an abstract matter when you have convicted somebody of a Federal RICO offense. And so it can't be that just because there's an interstate commerce element in the Federal RICO statute that, therefore, state and foreign convictions all drop away and the only time someone is an aggravated felon under J is if they've been convicted of a Federal RICO crime. If that were right, then there would have been no need for Congress to include that language at the end. That's there clearly because Congress wanted to pick up state and foreign versions of the crime and to then drop away, as Congress does sometimes, the sort of more minor versions of those crimes where there are different sentencing and penalty schemes in place. Scalia. Of course, he's not arguing that all Federal jurisdictional requirements have to be one of the elements. He's only saying that where the statute itself recites the jurisdictional element. Does RICO do that? What does RICO say? Yes. RICO does recite an interstate commerce element. It does. It recites the jurisdiction. The basic point is I counted, you know, made an effort to count these. And I accept your argument there are about ten of these sections that, you know, you couldn't use that as a limitation. But if I look at those ten individually, I will discover that Congress did want to pick up state crimes there, or they don't use exactly jurisdictional language like evade attacks imposed under this title. And it isn't really going to be the anomaly I thought it was. That's your point. Yes. That's one of my points, certainly. There are, I think, 17 different places in the aggregated felony provision. If you look at actually each of its little subsections, some of them have two or three subsections. And by my count, about nine of them have an interstate commerce jurisdictional element. And so it's not that the penultimate sentence would be superfluous on Petitioner's view, but it would start doing work in this very odd way for only about half of the aggravated felony provision. And that would just be a very strange, backward way. It wouldn't be strange if those were things that covered offenses that it makes sense not to want to put in to the definition. Right. And I don't think you would say that. And I thought that some of them did, but tax fraud, for example, the fraud tax fraud, but it uses different language. Yes. No, I think as to many of them, as with respect to the arson offense at issue here, it would make sense to pick up State and also particularly foreign crimes. I don't want foreign crimes to get left out of this discussion, because I think it's very important and it's very important to Congress when dealing with the kinds of people who are going to be covered by the aggravated felony provision, that if they had committed a sufficiently serious foreign crime, that that would get picked up. And, of course, foreign crimes are never going to have an interstate commerce jurisdictional element in them. Ginsburg, how do you deal with his lack of uniformity argument? That is, some crimes will, under State law, the same conduct will be labeled by some States a felony, other States a misdemeanor, and you get a lot of these lesser type offenses swept up into the provision that doesn't allow for cancellation of removal. That's not a feature of the Board's interpretation in this case. That's just a feature of the aggravated felony provision, that it sometimes sweeps in things that the States characterize as misdemeanors, and that's very well recognized both by the Board and by the courts of appeals. This is a Federal term of art, aggravated felony, which is used to show that certain immigration consequences should attach to someone. And so the fact that a State idiosyncratically or for its own reasons attaches a particularly low penalty to something that's set forth here is well recognized not to be a reason to get that out of the aggravated felony provision. Kagan. Kagan. But I believe that Mr. Guadagno's point was that this is, it's a reason why Congress may have used the language that it did rather than, say, just arson, right, that it wanted, that it understood that there was a wealth of very minor arson crimes out there in the States, that it wanted to exclude those, and the way it excluded those was essentially by saying, no, it's got to be the Federal offense. I think that would be, again, a sort of strange roundabout way to exclude them and to move it back through the crime of violence provision. It would be a lot of work. What Congress could much more easily have done is just to put a limitation right there in E-1, as it did in many other provisions that said you have to have a crime for which you're imprisoned for at least a year, or a certain value of property has to be affected. And Congress did that not only when it was describing juris — I'm sorry, generic aggravated felonies, but also it did it in some of the described-in sections like subsection J that I was talking about earlier. So that, I think, would be the way that Congress would have approached it. At the same time, I don't think there's anything at all strange in thinking that Congress didn't want to exclude even things that are more minor as arsons go on the scale of arsons on the view that arson is a really serious crime. It is aggravated in every sense of that word. But this one, this one wasn't. His crime, he got one day jail time and five years of probation. So it falls on the lesser side. Given your argument, is there any way that a person in his situation could get a cancellation of removal? No. So he's just stuck, absolute, even when it's a one-day jail time, a lesser crime. There's no — you're really locked into no means to obtain cancellation of removal. That's right, that he can't obtain cancellation of removal, and that's consistent with Congress's intent in putting the aggravated felony provision into place, which was to constrain the attorney general's discretion and to make it so that the attorney general was locked in to certain conclusions, and that was because Congress thought that the way that the whole cancellation of removal process was working before the aggravated felony provision went into place was it wasn't working well. Too many people were being allowed to stay, too many people were having their removal canceled, and Congress expressed very clearly in legislative history that it didn't like that, and it wanted to constrain the attorney general's discretion. I also think it's not the case that it's not the case that it's not the case that it hasn't been regulated in the first place, right? That's true, yes, although aggravated felony is a ground for removal. But I also don't want to lose sight of the fact that just because this Petitioner's sentence was one day and five years of probation does not mean that he committed a minor crime of some kind. We actually don't know what the conduct was. It's not in the record. But the only thing you've been able to think of, my guess is, that gets around his argument that arson and explosives will be covered by the crime of violence is it would if a person sets fire to his own property. Now, when would a person set fire to his own property? When he wants to commit fraud. And here we have a provision that puts fraud within it, and moreover, it has the limitation of $10,000. So therefore, serious fraud crimes will fall within this other section. So not even the case that you've really brought up is actually needs this provision to prosecute State explosive crimes, because either they're against other people's property, in which case they fall within crime of violence, or they're against your own property, in which case they are a species of fraud over $10,000. I'm not sure that necessarily works under the categorical approach, because it would depend what the person was actually prosecuted for in State court, and if they were prosecuted not for fraud, but simply for arson, and it was a provision that said that included arson against your own property, then I think you wouldn't fall into either one. But there's actually another reason that I didn't get to before why I think some arsons might not be crimes of violence, and there's actually just some uncertainty around this, but after this Court's decision in Leocal, people are continuing to wrestle with whether recklessness would count as a crime of violence. I think there are some, at least forms of recklessness, that are picked up by the substantive elements of Section 844. Malicious arson would include deliberate indifference to the possibility that there is going to be damage, and so there might be some slippage there as well, although as I say, I think the question is settled. Breyer's I think I dread this suggestion, but when I got into that in your health center, God, there's no way to avoid just doing this section by section and saying what did Congress want section by section, and then sometime, you know, and then if we did that section by section, maybe it would be satisfactory to say, you know, let them prove the jurisdictional hook in the deportation proceeding. That gives the Attorney General considerably more discretion. She can do it if she wants. She doesn't have to do it if she doesn't want to. Although I hesitate to reject a helpful suggestion, I actually think that the answer here is to drop out the jurisdictional provision entirely and not to do that for a couple of different reasons. First of all, I don't think it works for foreign crimes. So in a foreign crime situation, you can't come in and provide proof that it had an interstate commerce element because there's not really an equivalent to that on the foreign side. And so I just think there's a whole serious set of crimes that Congress wanted to include as to which that approach wouldn't function. It would also really multiply the difficulty of the proceedings and make them much longer and harder. And I do think the language here is a little different than the language that the Court was looking at in Nijuan, where this $10,000 limitation was in the aggravated felony provision itself and it was worded in a particular way that the Court seized on. So I just don't think that analysis necessarily carries over here. But, again, I think that all of the various signs that you would use to interpret the statute and, by the way, four of the courts of appeals that have addressed this have said the statute is unambiguously clear, it means what the board said it meant, I think that all of those signs are in place and show you that you should be dropping. Alito, back to your argument about subsection J, are there State RICO offenses for which a maximum, the maximum term of imprisonment is less than a year? I don't know the answer to that, but I think there may be, there might be such offenses and there might be foreign offenses like that as well, and I haven't been able to canvass that whole area, obviously, and I still think that's the only explanation for that limiting language at the end of subjection. Sotomayor, are there State or foreign RICO offenses at all? Honestly, I don't know the answer to that, but I think there might well be, if there are things that are. There are State RICO statutes, but RICO is regarded as a very serious crime. It seems strange to have a RICO misdemeanor. I've never heard of such a thing. I mean, I've seized on the RICO statute, but actually the very next provision in J, which is section 1084, the same analysis would apply. Section 1084 is a statute that has an interstate commerce element in it. It has to do with gambling and transmitting information for gambling in interstate commerce, and it is punishable by up to two years when it is prosecuted Federally and there's a Federal conviction. So the same analysis would work there as well, and that's something where I think it's pretty clear that there would be State analogs to the substantive elements of that crime. There would be foreign analogs to the substantive elements of that crime as well. I did want to pick up on one other thing the Petitioner said in his presentation, which is, well, why didn't Congress just use a generic definition of arson here? And I think there are a number of reasons for that. For one thing, I think it would have been underinclusive, because it wouldn't have included the explosives offenses that are set forth in the Federal statute very likely, or it's possible that courts would have reached that conclusion. For another, I think it would have entailed, and I know this Court is familiar with the process, it would have entailed coming up with what the elements of that generic offense are, and that could be difficult. I think it could be especially difficult in the arson context, where there are States that are sort of all over the place and that have moved away from the classic common law definition of burning of a dwelling place. And so I think there are very good reasons that Congress had, when it found a Federal criminal provision that had the substantive elements that it wanted, to simply refer to that Federal criminal provision using the looser language I've described in, in light of the penultimate sentence, and that's something that would add to that. Sotomayor, I can't square this with the categorical approach. You know, we've been very clear. The categorical approach says every element of a crime that has to be proven to a jury has to be included in the State offense. But now you're saying it's every categorical element that's not jurisdictional. Where do you get that from? Well, I think the thrust of the categorical approach is that you don't look at the particular conduct that the person engaged in. You look at the elements of the crime that they were convicted of, and then you compare it to something that Federal law tells you to compare it to. And I think that is a question of statutory interpretation. What it is that you're supposed to be comparing it to, that the Federal law is telling you, is the proper comparator. And here, that's the question we're answering. I mean, that's the question about what described in means, about what it means in light of the penultimate sentence. I don't think there's anything in this Court's categorical approach cases that would preclude the interpretation that we're putting forth here today. I just think it hasn't arisen in exactly this way before. But again, the important thing about the categorical approach is that you don't look at the Petitioner's particular conduct here. As I say, it's not even the record what his conduct is. All that we know is he committed a felony under New York State law that was punishable my understanding is by up to 7 years in prison. And that's the only information we have. And then we have to look at the elements of the New York statute that he was convicted under and compare them to the offense described in Section 844i. To the extent that the Court thought that there were ambiguity, we would ask for deference to the Board here. But we don't think there is ambiguity. We think that as the courts of appeals have said, that there is one reading of the statute to which all signs point, and that's the reading the Court should adopt, if there are no further questions. Ginsburg's original decision was the other way, and it wasn't until a circuit came out. Again, then the Board went in line with the circuit, so the Board read it. Doesn't that dilute the strength of the Board's current position, that it was not its original position? I don't think so. I mean, it is true that the Board changed positions, but it knew that it was doing it and it gave reasons for doing it, and it gave a lot of reasons in its ultimate decision in 2002 that are not reflected in the original decision, that the Board doesn't seem to have considered in the original decision. So I just think it's the Vasquez-Muniz decision from 2002 that has an analysis very similar to the analysis that the courts of appeals that have found the statute unambiguous have walked through here in looking at not only at the described in language itself, but at all the other signs about what the statute means. And I don't think it should be a negative that the Board revisited it and came to the correct conclusion. Am I not remembering this right, but wasn't there a change in position in Chevron itself? Yes. Well, there you go. There you go. I wasn't misremembering. Thank you. Mr. Guadagno, you have 4 minutes remaining. Congress could have utilized generic arson. Throughout Title 18 there are references to arson. Both briefs talk about the Federal Three Strikes Law. Within the Federal Three Strikes Law is actually a definition of arson. Congress could have referred to the definition of arson in that provision. In Provision K of the aggravated felony provision, it discusses first generically managing a prostitution business, and then it refers to Title 18 offenses regarding transportation of prostitutes. Congress could have said arson and then referred to Title 18 U.S.C. 844i. It could have combined both generic arson and a reference to explosive devices. With regards to the comment about not all State arson offenses being crimes of violence, because some would involve personal property, that issue has been resolved by the Board of Immigration Appeals since 1998. Our brief, our reply brief, mentions a case from the Board called Matter of Palacios, where the Board held that damaging your own property would constitute, burning your own property through arson would constitute a crime of violence. With regards to the comments about Defined In, with regards to the INA, Defined In is used consistently to refer to a definition, and the congressional drafting manuals all indicate that Defined In should be referring to a definition. And my final point is that what we're seeking here is cancellation of removal, discretionary relief, and that Congress would not have wanted to deprive individuals who have been convicted of minor offenses or less serious offenses of such discretionary relief and would want them to have a chance to demonstrate. Sotomayor What do you do with not – if we rule your way that it won't address the child pornography possession laws, or that it won't address some of the explosion laws? Sotomayor As I said before, there is overlap, and that they're very likely— Sotomayor Now, I want to know where the overlap is for the child pornography. Sotomayor There is, on that one, I don't think there's any question about that, because there is a Second Circuit case, I believe it's called Ouch v. Holder, where the government did not pursue the child pornography under the provision my friend is referring to. It was pursued under sexual abuse of a minor. So that is – there is at least one case out there where that is the way that the government pursued one of these cases. If there are no further questions, thank you. Roberts Thank you, Mr. Guadagno. Counsel. The case is submitted.